**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                                    **CASE NO: 3:11-cr-262-J-37JRK**

**JOHN DOE**

_____/

## ORDER

Before the Court for sentencing is the enigmatic Defendant John Doe.  On May

24, 2012, a Jacksonville Division jury deliberated for fifty-six minutes before returning a

verdict of guilty on six counts of falsely representing a social security number to be one

assigned to him, in violation of 42 U.S.C. § 408(a)(7)(B); seven counts of aggravated

identity theft, in violation of 18 U.S.C. § 1028A(a)(1); and one count of false statement in

application for a United States passport, in violation of 18 U.S.C. § 1542.

The jury found that John Doe falsely assumed the identity of the South Florida

correctional officer by the name of Lanail Thaddeus Hudson over twenty years prior to

his arrest.  Since assuming that false identity, Defendant has steadfastly refused to

disclose his real identity and, in fact, persisted in his claim that he was, in fact, Lanail

Thaddeus Hudson, born on September 3, 1967, and the lawful possessor of social

security number xxx-xx-9544.  At trial, Defendant testified that he was Lanail Thaddeus

Hudson, a claim which the jury soundly rejected.

Since 1988 or 1989, shortly after the real Lanail Thaddeus Hudson had his wallet

stolen in Miami from a burglarized vehicle, the jury determined that John Doe obtained,

among others, the following forms of identification by false representation: 1) multiple

1

"replacement" social security cards; 2) a Florida driver's license; 3) a Florida Department of Highway Safety and Motor Vehicles photo identification card; 4) Transportation Worker Identification Credentials badge; 5) duplicate birth certificate; 6) United States passport; 7) Washington State employment identification card; 8) Department of Corrections identification card (Defendant John Doe was incarcerated on unrelated state charges under the assumed identity); 9) Washington State "non-photo instruction permit;" 10) Washington State driver's license; 11) Duval County, Florida, voter registration card; 12) Jacksonville Port Authority identification card; and, 13) Mayport Naval Station identification card.  (PSR pp. 6-12.)  Throughout this lengthy, elaborate, and sophisticated fraudulent assumption of the identity of Lanail Thaddeus Hudson, Defendant John Doe obtained documents which allowed him access to areas requiring high-level security clearance, including, *inter alia*, the Jacksonville Port Authority, Mayport Naval Station, and unescorted access to Navy war vessels.

The Court considered and rejected Defendant's objection to the application of USSG § 2B1.1(b)(10)(C), which provides for a six level increase in the base offense level where the offense involves "sophisticated means."  The record clearly establishes that the Defendant engaged in a 22-year multiple state and federal agency fraud, making numerous applications and obtaining high-level security access under false pretenses.  The "sophisticated means" enhancement is therefore warranted.

Moreover, the Court considered and rejected Defendant's objection to the application of USSG § 3C1.1, which provides for a two level enhancement for obstruction of justice.  The Defendant testified at trial that he was, in fact, Lanail

Thaddeus Hudson, and thus continued his criminal conduct at trial. The two-level enhancement for obstruction of justice is warranted.

Accordingly, the Court adopted the factual statements and guideline applications contained in the presentence report as modified, and determined that the advisory guidelines resulted in a total offense level sixteen (16), criminal history category III. The guideline range for imprisonment on Counts 1, 3, 5, 7, 10, and 14, which are grouped pursuant to USSG § 3D1.2(B); Count 12 (USSG § 2L2.2); and Counts 2, 4, 6, 8, 11, 13, and 15, create a combined adjusted offense level of sixteen (16). A guideline sentence for Counts 1, 3, 5, 7, 10, and 14 is twenty-seven to thirty-three (27-33) months. The maximum term of imprisonment on Count 12 is ten years and the terms of imprisonment for Counts 2, 4, 6, 8, 11, 13, and 15 carry a mandatory minimum term of imprisonment of two years, at least one of which must be imposed consecutively to any other counts. All are grouped for purposes of establishing the guideline range. The Court carefully considered the arguments of counsel as well as the information contained in the presentence report. The Defendant waived his opportunity to allocute and continues to profess his innocence through counsel. The Court considered and rejected Defendant's argument that the imposition of consecutive sentences for the 1028A(a)(1) violations in Counts 2, 4, 6, 8, 11,13,&15 was not warranted by the facts under USSG 5G1.2.

The Court further considered the factors enumerated in § 3553(a)1-7, as well as the guideline computations, together with the USSG 5G1.2 factors and determines that a sentence of 120 months is sufficient but not greater than necessary to accomplish the purposes of sentencing. The Court clearly expressed its intention to impose a sentence of 120 months at the oral pronouncement of sentence. The most appropriate manner of

3

arriving at that term was unclear. To the extent there is any ambiguity the Court clarifies its oral pronouncement below. See, *United States v. Purcell, 715 F. 2d 561 (11th Cir.1983).* The Court hereby recalculates the 120-month sentence announced in open court as follows:

    a. Twenty-four (24) months on Counts 1, 3, 5, 7, 10, 12, and 14, all of these to run concurrently with each other;

    b. Twenty-four (24) months on Counts 2, 4, 6, and 8, to run consecutively to each other and consecutively to Counts 1, 3, 5, 7, 10, 12, and 14;

    c. Twenty-four (24) months on Counts 13 and 15, to run concurrently with each other and concurrently to Counts 1, 3, 5, 7, 10, 12, and 14.

The Court specifically finds that the nature and circumstances of the offense are particularly egregious in that the Defendant falsely assumed the identity of another individual over a period of 20 years, thereby compromising that individual's ability to obtain legitimate identification documents and impacting his ability to obtain a passport, driving privileges, as well as potentially jeopardizing his employment status as a correctional officer in Miami-Dade County, Florida. The Court notes that it is difficult, if not impossible, to assess the history and characteristics of the Defendant beyond his criminal history inasmuch as the Defendant continues to maintain that he is the individual whose identity he assumed. In the judgment of the Court, the sentence imposed will adequately and reasonably reflect the seriousness of the offense, promote respect for the law, and provide just punishment. In addition, the Court notes that the Defendant will presumably serve his time as John Doe and upon release from incarceration, absent some change in circumstances, will be released back into society

and begin his supervised release as John Doe.  Since the Defendant will still be in possession of all the background information of his victim, the Court is greatly concerned with the likelihood that the Defendant will recidivate; therefore, the Court finds that there is a strong need to protect the public from the potential for further crime and for the sentence imposed to provide both specific deterrence to this Defendant and general deterrence to those who might be inclined to engage in sophisticated identity theft of this nature. Additionally, the sentence imposed will better achieve the purpose of sentencing set forth in 18 U.S.C. 3553 (a)(2) by imposing partially consecutive sentences on the 1028A(a)(1) violations. Whether the sentence will provide the Defendant with needed educational training, medical care, or other correctional treatment in the most effective manner will depend in large measure on the Defendant's accommodation to incarceration.  To the extent the Defendant has expressed an interest in availing himself of programs of the Federal Bureau of Prisons, the sentence will afford him the opportunity to do so.  There are no other types of sentences available other than altering the duration of incarceration, and the Court is not aware of any other facts or circumstances which would suggest that the imposition of this 120-month sentence will create an unwarranted disparity between the Defendant and others with similar records who have been found guilty of similar conduct.

The undersigned presided over this case and was impressed by a number of things, not the least of which was the potentially catastrophic consequence of the scope and duration of this identity theft and the Defendant's ability to obtain a U.S. passport, biometric JaxPort Authority identification and access to some of the most secure facilities in the country.  The ability to obtain unescorted access to Naval warships, the

Jacksonville Port Authority, and Mayport Naval Station undermines the safety and security of the nation and renders this offense, in all likelihood, much broader and far reaching than those contemplated by the sentencing commission in formulating the guidelines and commentary.

Judgment will be entered accordingly.

ROY B. DALTON JR.
United States District Judge

**DONE** and **ORDERED** in Orlando, Florida on August 28, 2012.

Copies to:

Counsel of Record